IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

VICKIE REILING,

    Plaintiff,

v.

PARIS OPTICAL CO.,

    Defendant.

_____/

## **COMPLAINT**

Plaintiff VICKIE REILING (hereinafter "Plaintiff"), through the undersigned counsel, hereby files this complaint and sues PARIS OPTICAL CO. (hereinafter, referred to as "Defendant"), for declaratory and injunctive relief; for discrimination based on disability; and for the resultant attorney's fees, expenses, and costs (including, but not limited to, court costs and expert fees), pursuant to 42 U.S.C. §12181 et. seq., ("AMERICANS WITH DISABILITIES ACT OF 1990," or "ADA") and alleges:

### **JURISDICTION**

1. This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343 for Plaintiff's claims arising under Title 42 U.S.C.§12181 et. seq., based on Defendant's violations of Title III of the Americans with Disabilities Act of 1990, (hereinafter referred to as the "ADA"). See also 28 U.S.C. §2201 and §2202.

## VENUE

2. The venue of all events giving rise to this lawsuit is located in the Southern District of Florida. Pursuant to 28 U.S.C. §1391, this is the designated court for this suit.

## PARTIES

3. Plaintiff, VICKIE REILING, is a resident of the State of Florida and is deaf.

4. At the time of Plaintiff's visits to Defendant's medical offices in both Palm Beach Gardens and Miami, ("Subject Facilities"), Plaintiff suffered from a "qualified· disability" under the ADA, which substantially limits Plaintiff's major life activities, including but not limited to her ability to hear.

5. The Plaintiff personally visited Defendant, but was denied full and equal access, and full and equal enjoyment of the facilities, services, goods, and amenities within the Subject Facilities, which is the subject of this lawsuit. The Subject Facilities are medical offices and Plaintiff attempted to seek medical treatment, but was unable to receive such treatment due to the discriminatory barriers enumerated in Paragraph 12 of this Complaint.

6. Defendant is authorized to conduct business and is in fact conducting business within the State of Florida.

## CLAIMS: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

7. Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 4 of this complaint, as are further explained herein.

8. On July 26, 1990, Congress enacted the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et. seq. Commercial enterprises were provided one

and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendants had ten (10) or fewer employees and gross receipts of $500,000 or less. See 42 U.S.C. §12181; 28 C.F.R. §36.508(a).

9. As stated in 42 U.S.C. §12101(a) (1)-(3), (5) and (9), Congress found, among other things, that:

    i. some 43,000,000 Americans have one or more physical or mental disability, and this number shall increase as the population continues to grow and age;

    ii. historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

    iii. discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

    iv. individuals with disabilities continually suffer forms of discrimination, including: outright intentional exclusion; the discriminatory effects of architectural, transportation, and communication barriers; failure to make modifications to existing facilities and practices; exclusionary qualification standards and criteria; segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

      v. the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which this country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

10. As stated in 42 U.S.C. §12101(b)(1)(2) and (4), Congress explicitly stated that the purpose of the ADA was to:

      i. provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

      ii. provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

      iii. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

11. Pursuant to 42 U.S.C. §12181(7)(F), and 28 CFR §36.104, Title III, no individual may be discriminated against on the basis of disability with regards to the full and equal enjoyment of the goods, services, facilities, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. Defendant is a place of public accommodation by the fact it is an establishment that provides goods/services to the general public, and therefore, must comply with the ADA. The Subject Facilities, as a medical care provider, are open to the public and its operations affect commerce.

Therefore, the Subject Facilities are public accommodations that must comply with the ADA.

12. The Defendant has discriminated, and continues to discriminate against the Plaintiff, and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at the Subject Facilities, as prohibited by 42 U.S.C. §12182, and 42 U.S.C. §12101 et. seq.; and specifically by failing to provide auxiliary aids for the deaf pursuant to 42 U.S.C.§ 12182(b)(2)(A).

13. Plaintiff has visited the Subject Facilities, and has been denied full, safe, and equal access to the Facilities and therefore suffered an injury in fact. Specifically, Plaintiff was referred to Dr. William Winegar, who is the owner of the Defendant, due for her severe case of Keratoconus (a condition in which the clear tissue on the front of the eye (cornea) bulges outward).

14. Plaintiff's mother, Janet Reiling (who does not know sign language), was Plaintiff's primary caregiver and would take Plaintiff to Defendant's location in Palm Beach Gardens.

15. Upon the early visits to Defendant, it was clear that Defendant failed to have an interpreter there, despite Janet requesting one several times.

16. Thereafter, Plaintiff's granddaughter, Jessica, went to one of these appointments that again had no interpreter, and recognized confusion in communication that was due to not having an interpreter there.

17. Jessica specifically informed Dr. Winegar that he must provide an interpreter because Plaintiff was not understanding him, and when he was checking her vision, Janet noticed miscommunications, and would step in to interpret for Plaintiff, although Jessica was not a

qualified interpreter.

18. Dr. Winegar shrugged this off, convinced he could communicate with Plaintiff just fine without one.

19. Dr. Winegar stated that he tried to obtain an interpreter, but could not get one.

20. Neither Plaintiff, Janet, nor Jessica knew their rights under the ADA, and what they could do about it.

21. However, Jessica contacted Dr. Jay Wallshein, who had referred Plaintiff to Defendant, to ask if he could recommend someone else.

22. Dr. Wallshein's office informed Jessica that Defendant was the best person for the Plaintiff's treatment. Thus, Plaintiff continued seeing Defendant for treatment, despite the lack of clear communication between them.

23. Over this time, Plaintiff continuously was losing expensive contact lenses that were being prescribed for her by Defendant.

24. During this period, Jessica was attending Miami-Dade College to become an interpreter, and began to become more involved in Plaintiff's treatment.

25. Due to the ongoing issues with Plaintiff's contacts, Jessica demand an interpreter for her, resulting in a number of arguments with Defendant's staff.

26. Jessica then contacted the accessibilities/compliance department with Bascom Palmer in Miami to file a complaint against the Defendant.

27. Jessica was informed that Bascom Palmer would gladly provide a VRI machine for this treatment, but considering Defendant was considered a contractor, and not an employee, it would be up to Defendant to use the service.

28. The day before Plaintiff's next appointment, Jessica called to confirm an interpreter would be provided, which was in fact confirmed.

29. When Plaintiff and Jessica arrived to the Defendant's Miami office, Dr. Winegar stated, again, that he and Plaintiff communicated just fine.

30. Jessica demanded he provide accommodations as requested and confirmed by his office staff, at which point Dr. Winegar started to request for Jessica to interpret for Plaintiff.

31. Jessica refused since she was not yet a licensed interpreter, and again demanded accommodations .

32. Dr. Winegar finally brought in the VRI machine, at which point Jessica left the room.

33. Jessica returned a short while later to ensure all was going smoothly, at which point she heard Dr. Winegar say to his assistant, "get this thing [the VRI] out of here, it's costing us money".

34. Jessica immediately informed Dr. Winegar how unprofessional and insulting his behavior was, and again contacted the accessibilities/compliance department to inform them what had taken place.

35. By July of 2019, Plaintiff lost yet another set of contacts as they kept "popping out".

36. Plaintiff's son, Jarred, then went and requested an interpreter, which had been confirmed before the next appointment at the Defendant's Palm Beach Gardens location.

37. However, once again no interpreter was provided to Plaintiff at this appointment, and instead a friend, Susan Pine, interpreted for her at this appointment.

38. From there, Plaintiff would be seen by Jessica struggling to see items that were not far from her, at which point Jessica believed that Plaintiff could not see properly with these contacts.

39. Jessica immediately contacted Dr. Wallshein, and was provided the information

for a contact specialist, Dr. Martin Burger.

40. At the initial appointment with Dr. Burger, he stated that with these new contacts that had been prescribed by Defendant, Plaintiff only saw 80/20.

41. After the Plaintiff's visits with Dr. Burger, who properly provided an interpreter every time, Plaintiff was prescribed appropriate corrective lenses that no longer resulted in them popping out.

42. Plaintiff is therefore prevented from seeking out medical services from the Defendant due to the fact that Defendant's failure to accommodate the Plaintiff will result in harm to the Plaintiff.

43. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. The ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. Part 36, may cause violators to obtain civil penalties of up to $55,000 for the first violation and $110,000 for any subsequent violation.

44. The Defendant is in violation of 42 U.S.C. §12181 et. seq., and 28 C.F.R. 36.302 et. seq., discriminated against the Plaintiff with the following specific violations which Plaintiff personally encountered and/or has knowledge of:

45. The Defendant does not provide auxiliary aids to the detriment of its hearing-impaired customers.

46. Upon information and belief there are other current violations of the ADA at the Subject Facilities. Only upon full inspection can all violations be identified. Accordingly, a complete list of violations will require an on-site inspection by Plaintiff's representatives pursuant to Rule 34b of the Federal Rules

of Civil Procedure.

47. Upon information and belief, Plaintiff alleges that correction of the discriminatory barriers and violations is readily achievable and technically feasible. To date, the readily achievable barriers and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

48. Pursuant to the ADA, 42 U.S.C. §12101 et. seq., and 28 C.F.R. §36.304, the Defendant was required to make the establishment a place of public accommodation, accessible to persons with disabilities by January 28, 1992. As of this date the Defendant has failed to comply with this mandate.

49. The Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have its reasonable attorney's fees, costs and expenses paid by the Defendant, pursuant to 42 U.S.C. §12205.

50. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the subject facilities to make them readily accessible and useable by individuals with disabilities to the extent required by the ADA, and closing the Subject Facilities until the requisite modifications are completed.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the Defendant and requests the following injunctive and declaratory relief:

51. That this Honorable Court declares that the Subject Facilities owned, operated and/or controlled by the Defendant is in violation of the ADA;

52. That this Honorable Court enter an Order requiring Defendant to alter the Subject Facilities to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

53. That this Honorable Court enter an Order directing the Defendant to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to the Subject Facilities;

54. That this Honorable Court award reasonable attorney's fees, all costs (including, but not limited to court costs and expert fees) and other expenses of suit, to the Plaintiff; and

55. That this Honorable Court award such other and further relief as it deems necessary, just and proper.

Dated: August 11, 2020.

Respectfully submitted,

Law Offices of Levy & Levy, P.A.
1000 Sawgrass Corporate Parkway, Suite 588
Sunrise, Florida  33323
Telephone: (954) 763-5722
Facsimile: (954) 763-5723
*Counsel for Plaintiff*

*/s/ Chad Levy*
CHAD E. LEVY, ESQ.
chad@levylevylaw.com
Secondary: assistant@levylevylaw.com
F.B.N.: 0851701
DAVID M. COZAD, ESQ.
david@levylevylaw.com
F.B.N.: 333933